Mitchell Scott BRODY, Plaintiff,

v.

William G. McMAHON, John J. McNulty, Jr. and Jeanne Edna Thelwell, Defendants.

No. 87–CV–1547.

United States District Court, N.D. New York.

April 27, 1988.

Mitchell Scott Brody, pro se.

Robert Abrams, Atty. Gen., of the State of New York, Albany, for defendants; Robert B. Keyes, Asst. Atty. Gen., of counsel.

## MEMORANDUM–DECISION and ORDER

JAMES T. FOLEY, Senior District Judge.

By Order and Report–Recommendation dated October 27, 1987 Magistrate Daniel

Scanlon, Jr., ordered that the Clerk compute the partial payment fee for filing the pro se complaint of a state prison inmate under 42 U.S.C. § 1983, and so notify the plaintiff. Magistrate Scanlon recommended also that plaintiff's motion for class certification be denied. By Order dated December 2, 1987, that recommendation was accepted and adopted and class certification denied. The partial payment filing fee was computed at $3.20, was paid by the plaintiff with leave to proceed in forma pauperis, and the complaint was served upon the three named defendants. A motion to dismiss the complaint pursuant to F.R.Civ.P. 12(b)(6) was filed in behalf of the three defendants. The plaintiff pro se submitted an affidavit in opposition. By Report–Recommendation dated March 3, 1988 Magistrate Gustave J. DiBianco denied the motion to dismiss. As I expected, after my initial review of the Report–Recommendation when it was filed in the Clerk's office March 7, 1988, objections to the Report–Recommendation were filed by Assistant Attorney General Robert B. Keyes for the defendants.

The three named defendants are members of the New York State Commission of Correction, and defendant McMahon is also Chairman of the Commission. In the countless pro se lawsuits filed in this District Court over the years, I am quite certain this is the first instance of suit pursuant to 42 U.S.C. § 1983 against the members of the New York Commission of Correction for substantial money damages and injunctive relief. The gravamen of the pro se complaint herein pleaded in the form is "all three defendants know about the conditions of the facility (Clinton Correctional), and have not made any changes to help stop the correctional authority's [sic] from violating our constitutional rights". Attached to the form complaint is two yellow pages with a list of grievances numbered 3 to 19, alleging inadequate heat to limited privileges in keeplock in the use of a telephone. The plaintiff states that he has filed over "50" grievances and the Commission affirmed all of them.

In the discussion in his Report–Recommendation, the Magistrate first notes that it is well settled that the personal involvement of a defendant is a prerequisite for the assessment of damages in a section 1983 action, and that the doctrine of respondeat superior is inapplicable to section 1983 claims, citing *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978); *Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981); *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). From this strong premise, however, the Magistrate analyzes the rulings of the Court of Appeals, Second Circuit, in *Williams v. Smith,* 781 F.2d 319, 323–324 (2d Cir.1986), delineating the various ways in which a defendant can be personally involved in a constitutional deprivation. The interpretation is then made and conclusion drawn that under the powers of the Commission of Correction to review inmate grievances in the New York Correction Law Section 139(3) that it would be possible for the defendants to be personally responsible within the definitions outlined by *Williams* because the Commissioners could become aware of an unconstitutional situation through a grievance and fail to act upon it.

In my judgment, reliance upon *Williams* with the interpretation to allow suit against the Commission of Correction is misplaced. The rulings therein were made in a summary judgment context and the issue decided only was that summary judgment was improperly granted for defendant Smith, the Superintendent of the Attica Correctional Facility, and that plaintiff Williams was entitled to prove that Superintendent Smith was personally involved in depriving him of his alleged due process right to call witnesses in a disciplinary hearing held at the Facility. The several ways outlined in *Williams* outside of direct participation in the infraction emphasize that *supervisory officials* may be personally liable in certain situations in a section 1983 action. The major difference here is that members of the Commission of Correction are not *supervisory officials* of the New York State

Correctional Facilities in any sense factually or legally. By express law, the Commissioner of Correctional Services is the chief executive officer of the Department of Correctional Services. N.Y. Correction Law, Art. 2, Section 5(2), (McKinney's 1987).

The functions and powers of the Commission of Correction are set forth in detail in Article 3 of the New York Correction Law, Sections 45 and 46, (McKinney's 1987). It is clear from the wording of these provisions that the members of the Commission are not endowed with any operational or supervisory responsibilities of the Clinton Correctional or any other New York Facility, and the plaintiff as he could not does not allege their personal involvement in his laundry list of grievances. There is an interesting Practice Commentaries by William F. Pelgrin, about Art. 3—State Commission of Correction, N.Y. Correction Law, (McKinney's Supp.1988). The commentary notes that the New York State Commission of Correction has a long and unique history. That the most sweeping change occurred in 1975 with the creation of a new, three-member, full-time Commission, the present one involved in this suit. In approving the legislation, Governor Carey noted that "[i]t is of the utmost importance that there be some independent and effective oversight of the operation of [the correctional] system to assure the public that its performance meets or exceeds acceptable standards, that its practices are consistent with the goals of our criminal justice system, and that the rights and responsibilities of inmates and correctional personnel are recognized and respected".

Section 139(3) of the New York Correction Law, that relates to Grievance Procedures in the Correctional Facilities, and that the Magistrate invoked to hold the Commission of Correction possibly subject to suit under 42 U.S.C. § 1983 states:

3. A person aggrieved by the decision of a grievance resolution committee may apply to the commissioner for review of the decision. The commissioner or his deputy may take such action as he deems appropriate to fairly and expeditiously resolve the grievance to the satisfaction of all parties. If the resolution of the complaint by the commissioner or his deputy is deemed unsatisfactory by any party to the grievance, at the request of such party, the commissioner shall refer the matter to the state commission of correction for review and recommendation. The commission may, if it deems it appropriate, delegate its function under this section to an independent arbitrator. A copy of the commission's recommendation shall be promptly forwarded to the parties and to the commissioner. If the commission's recommendation is rejected by the commissioner wholly or in part, the commissioner shall state his reasons for such rejection in writing and both the commission's recommendation and the commissioner's reasons shall be made public.

This section is implemented in 7 NYCRR 701.11, Fourth Step, effective August 31, 1986. It is clear that the function of the Commission of Correction is limited strictly to review and recommendation by itself or through an independent arbitrator, with a copy of the recommendation forwarded to the Commissioner of Correctional Services. If the Commissioner rejects such recommendation, the only requirement is that the reasons for the rejection be made public in certain publications to be maintained in the facility law library and the Inmates Grievance resolution committee library, IGRC office.

The express function of the Commission of Correction is to insure public awareness of conditions within the State Correctional facilities. Its responsibility is one of adequate and effective oversight. There is no hiring, firing, or disciplinary power over any supervisory staff or personnel of the correctional facilities. There is no direct power to control or direct the customs and policies of the facilities. To sustain a 42 U.S.C. § 1983 action, there must be some showing of personal responsibility for the alleged constitutional deprivation, and plaintiff has to allege direct and personal responsibility for the purported unlawful conduct of subordinates. *See Duchesne v. Sugarman,* 566 F.2d 817, 830 (2d Cir.1977); *Black v. U.S.,* 534 F.2d 524, 527–28 (2d

Cir.1976). Finally, after all the serious analysis, the most apt and best description of the New York State Commission of Correction role and function was made by plaintiff Brody in his affidavit in opposition filed February 12, 1988 to the motion to dismiss. The simple description in that affidavit is: "(2) Defendants work as a State Watchdog agency xxx".

The reasoning, conclusions, findings and recommendation in the Report–Recommendation of the Magistrate, dated March 3, 1988 and filed March 7, 1988, are hereby rejected. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons stated herein, the motion in behalf of the three named defendants to dismiss the complaint is granted and the complaint is hereby dismissed.

It is so Ordered.