**William KREGLER, Plaintiff,**

v.

**CITY OF NEW YORK
et al., Defendants.**

**No. 08 Civ. 6893(VM).**

United States District Court,
S.D. New York.

Oct. 26, 2011.

Nathaniel B. Smith, Law Office of Nathaniel B. Smith, New York, NY, for Plaintiff.

Christopher Aaron Seacord, New York City Law Department, New York, NY, for Defendants.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff William Kregler ("Kregler") brought this action pursuant to 42 U.S.C.

§ 1983 ("§ 1983") against the City of New York ("City") and individual defendants ("Individual Defendants") Louis Garcia ("Garcia"), Rose Gill Hearn ("Hearn"), Keith Schwam ("Schwam"), Darren Keenaghan ("Keenaghan"), Brian Grogan ("Grogan"), and Jayme Naberezny ("Naberezny"). At all relevant times, the Individual Defendants were employees of the City's Fire Department ("FDNY") or Department of Investigation ("DOI"). On August 13, 2010, the City and Garcia answered the Second Amended Complaint.[1] That same day, Hearn, Schwam, Keenaghan, and Grogan moved pursuant to Rules 12(b)(1), (4) and (6) of the Federal Rules of Civil Procedure ("Federal Rules") to dismiss the Second Amended Complaint for failure to state a claim. In addition, Naberezny moved to dismiss the Seconded Amended Complaint as time barred. Because the parties' briefs referred to materials outside the pleadings, the Court, by Decision and Order dated March 9, 2011 (the "Order"), converted Individual Defendants' motion to a motion for summary judgment (the "Motion") pursuant to Rule 12(d) of the Federal Rules and directed the parties to submit supplemental briefing and any relevant, additional evidence. For the reasons stated below, the Court now GRANTS the Motion.

### I. BACKGROUND[2]

In April of 2004, one month following his retirement from his position as a Fire

---

1. Although entitled "First Verified Amended Complaint," the operative pleading, dated July 9, 2010 (Docket No. 39), is actually the second amended complaint filed by Kregler. Accordingly, for the sake of accuracy, it will be referred to as the "Second Amended Complaint" or "Compl."

2. The Court derives the factual summary from (1) the recitation of the pertinent pleadings and other matters of record set forth in the

Order, see Kregler v. City of New York, 770 F.Supp.2d 602 (S.D.N.Y.2011); (2) the Second Amended Complaint; (3) Local Civil Rule 56.1 Statement of Undisputed Facts in Support of Defendants Naberezny, Gill Hearn, Schwam, and Grogan's Converted Motion for Summary Judgment, dated May 20, 2011; and (4) Local Civil Rule 56.1 Opposition Statement of Disputed Facts in Opposition to Motion for Summary Judgment, dated June

Marshal with the FDNY after being employed there for 20 years, Kregler filed a preliminary application and questionnaire for appointment by the City's Mayor as a City Marshal. Candidates for appointment as City Marshals are subject to an investigation by DOI of their personal and financial background and must complete a DOI-administered training program. In January of 2005, Kregler was interviewed by representatives of the Mayor's Committee on City Marshals and was later notified by Schwam, an Assistant Commissioner at DOI, that DOI would commence its personal and financial review of Kregler's background. Kregler met in April of 2005 with Keenaghan, a DOI investigator, to discuss Kregler's preliminary application. Kregler then made minor modifications to the application, signed the revised form, and provided authorizations for release of his personal information.

On May 25, 2005, Kregler, in his capacity as President of the Fire Marshals Benevolent Association, publicly endorsed the candidacy of Robert Morgenthau ("Morgenthau") for re-election as District Attorney for New York County. At that time, all other law enforcement associations in the City, including two unions of firefighters, supported Morgenthau's opponent, Leslie Crocker Snyder ("Snyder"). An article that appeared in a June 2005 edition of *The Chief*, a local newspaper, reported on Kregler's endorsement of Morgenthau. Grogan, an FDNY Supervising Fire Marshal, posted a copy of that article in a public area within one of the FDNY offices. Kregler alleges that Grogan then "berated" him for the endorsement, stating: "who the f___ do you think you are. Louie [Garcia] makes the endorsement." (Compl. ¶ 29.) At the time of that incident, Garcia was the Chief Fire Marshal of

the FDNY's Bureau of Fire Investigation. Both Garcia and Grogan supported Snyder's political campaign against Morgenthau.

On July 7, 2005, Kregler was interviewed by staff of the Mayor's Office in connection with his City Marshal application and the following day was told by Schwam that the next step in the process would be the completion of the DOI background check. To that end, Kregler met a second time with Keenaghan to update and re-file his application. In September of 2005, Schwam invited Kregler and four other candidates to begin the DOI training classes, which Kregler successfully completed. In November of 2005, Kregler satisfied the last requirement for appointment by demonstrating his ability to obtain a bond. In March of 2006, Kregler was informed by letter from Schwam that he would not be appointed as a City Marshal.

Kregler filed this action in August of 2008, raising a claim of First Amendment retaliation under § 1983. Kregler contends that the explanation proffered to him for the denial of his application—Kregler's failure to disclose details of a Command Discipline he had received in 1999 during his employment by the FDNY—was merely a pretext for defendants' unlawful retaliation for his endorsement of Morgenthau.

On December 2, 2008, defendants moved to dismiss the first amended complaint, dated November 14, 2008 ("First Amended Complaint"), asserting that Kregler failed to state a claim upon which relief could be granted. By Decision and Order dated March 16, 2009, 608 F.Supp.2d 465 (S.D.N.Y.2009), the Court deferred ruling on the motion to dismiss pending the outcome of a preliminary hearing pursuant to

27, 2011. Except where specifically referenced, no further citation to these sources will be made.

Rule 12(i) of the Federal Rules ("Rule 12(i) Hearing"). The Court conducted the Rule 12(i) Hearing on July 16, 2009 and heard the parties' further oral arguments on July 18, 2009. On August 14, 2009, by Decision and Order, the Court dismissed the First Amended Complaint in its entirety. Kregler appealed and, on May 3, 2010, the United States Court of Appeals for the Second Circuit issued a summary order ("Summary Order") vacating the order of dismissal and remanding the case to this Court for further proceedings. *See Kregler v. City of New York,* 375 Fed.Appx. 143, 144 (2d Cir.2010).

On July 9, 2010, Kregler filed his Second Amended Complaint in which, among other things, he added Naberezny, the Inspector General for the DOI, as a defendant. Also Kregler now alleges that Garcia was "personally and socially acquainted" with Naberezny (Compl. ¶ 40) and that the two "agreed to cause Kregler's application for appointment as a City Marshal to be rejected by DOI in retaliation for Kregler's support of Morgenthau." (Compl. ¶ 43.) The Individual Defendants again moved to dismiss, and the Court converted the motion to a motion for summary judgment.

## II. *LEGAL STANDARD*

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all the facts of the record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry,* 77 F.3d 34, 35 (2d Cir.1996) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight*

*v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986).

The moving party bears the burden of proving that no genuine issue of material fact exists, or that due to the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. *See Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1223 (2d Cir.1994). The opposing party cannot defeat summary judgment by relying on the allegations in the complaint, conclusory statements, or mere assertions that affidavits supporting the motion are not credible. *See Gottlieb v. Cnty. of Orange,* 84 F.3d 511, 518 (2d Cir.1996).

■ To succeed on his First Amendment retaliation claim under § 1983, Kregler must show that: (1) he engaged in constitutionally protected speech; (2) he suffered an adverse employment action; and (3) a causal connection exists between the speech and the adverse employment action "so that it can be said that the speech was a motivating factor in the determination." *Washington v. Cnty. of Rockland,* 373 F.3d 310, 320 (2d Cir.2004).

■ It is well settled in the Second Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (internal quotation marks omitted). Personal involvement, however, is not limited to direct participation in the deprivation of rights at issue. Kregler may show the personal involvement of the Individual Defendants in several ways, such as by establishing that each defendant: (1) directly participated in the infraction; (2) failed to remedy the wrong after learning of the violation; (3) created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue; (4) was grossly negligent in

managing subordinates who caused the unlawful condition or event; or (5) exhibited "gross negligence" or "deliberate indifference" to the constitutional rights of Kregler by having actual or constructive notice of the unconstitutional practices and failing to act. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995); *see also Wright*, 21 F.3d at 501.

## III. *DISCUSSION*

### A. *CLAIMS AGAINST HEARN*

In his First Amended Complaint, "to amplify his allegations against Hearn" and avoid motion practice (Pl. Mem. 8), Kregler advanced the theory that the personal relationship between Hearn and Garcia provided the impetus by which the two of them allegedly agreed to reject Kregler's application for City Marshal in retaliation for supporting Morgenthau. However, after hearing testimony at the Rule 12(i) Hearing, Kregler's counsel stated on the record:

> [s]o what I have here is a situation where I think I've named the wrong defendant. And, in fact, I would like to make an application to the Court to substitute in Naberezny for Gill Hearn because it looks to me like the discussion, the understanding about Kregler not becoming a sheriff that was had, was had between Naberezny and Garcia and not between Garcia and Gill Hearn.

(Hr'g Tr. 26:18–26:24, July 28, 2009.)

Subsequently, Kregler substituted Naberezny's name for Hearn's in the Second Amended Complaint. He now maintains that it was Naberezny who had the relationship with Garcia and that it was Naberezny who colluded with Garcia to cause the denial of Kregler's appointment.[3] Despite the evidence adduced at the Rule

12(i) Hearing and the statements of Kregler's counsel, Kregler continues to pursue a claim against Hearn as Commissioner of the DOI, who "was responsible for training, investigation, and oversight of City Marshals." (Compl. ¶ 6.) Hearn argues that the claims against her must be dismissed because Kregler's counsel admitted on the record that there is no factual basis for alleging Hearn was aware of any retaliatory action taken against Kregler.

■ "[A]bsent egregious circumstances, a distinct and formal admission made before, during, or even after a proceeding by an attorney acting in his professional capacity binds his client as a judicial admission." *Haywood v. Bureau of Immigration*, 372 Fed.Appx. 122, 124 (2d Cir.2010). "[H]owever, to bind the client by such statements, they must constitute 'a clear and unambiguous admission of fact.'" *Stowe v. Nat'l R.R. Passenger Corp. ("Amtrak")*, No. 08 Civ. 4767, 793 F.Supp.2d 549, 554, 2011 WL 2516939, at *2 (E.D.N.Y. June 23, 2011) (*quoting United States v. McKeon*, 738 F.2d 26, 30 (2d Cir.1984)). Only statements of facts as opposed to legal arguments made to a court are considered judicial admissions. *N.Y. State Nat'l Org. for Women v. Terry*, 159 F.3d 86, 97 n. 7 (2d Cir.1998).

■ A review of the record suggests that Kregler's counsel made a clear and unequivocal statement to substitute Hearn for Naberezny as a defendant. Even if the Court were to construe counsel's statements as "legal conclusions" as Kregler suggests (Pl. Mem. 10.), Kregler admits that naming Hearn as a defendant based solely on her alleged relationship with Garcia was an error. Therefore, to defeat the motion for summary judgment, it is incum-

---

3. The Second Amended Complaint states that "Naberezny and Garcia are personally and socially acquainted" (Compl. ¶ 40) and they "agreed to cause Kregler's application for ap-

pointment as a City Marshal to be rejected by DOI in retaliation for Kregler's support of Morgenthau." (Compl. ¶ 41.)

bent upon Kregler to offer another theory of liability supported by evidence that establishes Hearn's personal involvement. Kregler presents only conclusory statements that Hearn was deliberately indifferent to facts showing that his rights were being violated and that she terminated his application based on unsubstantiated information provided by Naberezny; Kregler offers no evidence supported by the record to advance such contentions. *See Niagara Mohawk Power Corp. v. Jones Chem., Inc.,* 315 F.3d 171, 175 (2d Cir.2003) ("Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact.").

Kregler argues that it is premature for the Court to decide the issue of Hearn's liability without providing him an opportunity to take complete discovery. The Court disagrees. Not only did Kregler have an opportunity to elicit testimony from Hearn at the Rule 12(i) Hearing regarding her personal involvement, but the Court explicitly stated in its Order that to decide the issue at hand it was necessary for the parties to submit additional material that they believed pertinent to the motion for summary judgment. (*See* Order at 9.) Although the Court considers Kregler's arguments regarding Hearn's liability to be mere conjecture (i.e., that Hearn was deliberately indifferent and that she terminated Kregler's application based on weak grounds), even if evidence existed to support that conclusion, Kregler's claim against Hearn still fails as a matter of law. *See Whitfield v. Imperatrice,* No. 09 Civ. 3395, 2010 WL 6032636, at *12 (E.D.N.Y. Sept. 17, 2010) (finding no personal involvement for individual defendants where defendant provided "no evidence that these individuals were aware of his complaints to the Office of Court Administration" and thus individual defendants "could not possibly have been 'prompted' or motivated to act in retaliation for plaintiff's complaints"). Here, Kregler has not dem-

onstrated that Hearn had any actual or constructive knowledge of any intent to retaliate against Kregler because of his endorsement of Morgenthau—a necessary element to establish Hearn's personal involvement. Accordingly, upon review of the record and the parties' submissions, the Court finds that Kregler has not established any genuine issue of material fact suggesting that Hearn was personally involved in the alleged constitutional violation. The claims against Hearn are therefore dismissed.

### B. *CLAIMS AGAINST SCHWAM AND KEENAGHAN*

Kregler alleges in his Second Amended Complaint that Schwam and Keenaghan were aware that the explanation proffered to Kregler for the denial of his application was false, but "deliberately decided to look the other way." (Compl. ¶ 49.) In their motion to dismiss, Schwam and Keenaghan argue that the claims against them must be dismissed because they lacked the authority to cure the alleged constitutional violation. Kregler, on the other hand, contends that the Second Circuit has already rejected Schwam's and Keenaghan's arguments relating to their lack of personal involvement or authority to remedy the constitutional violation in the Summary Order. Thus, he asserts that under the "law of the case" doctrine, the Court must reject those arguments here.

"The 'law of the case' doctrine is a rule of practice followed by New York courts that dictates that 'a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation.'" *Westerbeke Corp. v. Daihatsu Motor Co.,* 304 F.3d 200, 218 (2d Cir.2002) (citations omitted). In its Summary Order, the Second Circuit stated: "We have considered all of defendants' contentions in

support of the Rule 12(b)(6) dismissal and have found them to be without merit." *Kregler,* 375 Fed.Appx. at 144. The Second Circuit, however, did not specify in its ruling what arguments were raised in support of defendants' previous motion to dismiss. Accordingly, the Court converted Schwam's and Keenaghan's second motion to dismiss to a motion for summary judgment to allow the parties an opportunity to provide additional briefing and materials regarding the issues raised and considered on appeal to assist the Court in determining whether the "law of the case" doctrine applies.

■ After review of the parties' submissions and the appellate record, the Court finds that the "law of the case" doctrine does not control here because the Second Amended Complaint alleges materially different and more detailed claims than the Amended Complaint, which was the subject of the Summary Order. *See Bellezza v. Holland,* No. 09 Civ. 8434, 2011 WL 2848141, at *3 (S.D.N.Y. July 12, 2011) (finding that "law of the case" doctrine is inapplicable where subsequent complaint is materially different and more detailed than original complaint reviewed by appellate court). For example, the Second Amended Complaint alleges that "Garcia and Naberezny agreed to cause Kregler's application for appointment as City Marshal to be rejected by DOI in retaliation for Kregler's support of Morgenthau" (Compl. ¶ 43), whereas the First Amended Complaint does not contain any specific allegations as to who was responsible for making the decision to terminate Kregler's application. In the First Amended Complaint, Kregler advanced the theory that Schwam and Keenaghan directly participated in the alleged violation of his constitutional rights, but in the Second Amended

Complaint he asserts that they were deliberately indifferent. Specifically, Kregler alleges that Schwam and Keenaghan knew that the City's stated reason for rejecting his application was false, but "deliberately decided to look the other way." (Compl. ¶ 49.) The First Amended Complaint did not advance a theory of deliberate difference and thus the Second Circuit could not have rejected that mode of liability regarding Schwam and Keenaghan.

■ Since the "law of the case" doctrine is inapplicable here, the Court will proceed to determine whether Kregler's claims against Schwam and Keenaghan fail as a matter of law.[4] Schwam and Keenaghan contend that, under a theory of deliberate indifference, an individual who lacks the authority to remedy or "take action with respect to any constitutional violation" cannot be found to be personally involved. *Koulkina v. City of New York,* 559 F.Supp.2d 300, 317 (S.D.N.Y.2008); *see also Keesh v. Goord,* No. 04 Civ. 271A, 2007 WL 2903682, at *6 (W.D.N.Y. Oct. 1, 2007) (finding no personal involvement where defendant who oversaw prisoner grievances signed determination made by committee on plaintiff's grievance but did not have voting power regarding decision); *Brody v. McMahon,* 684 F.Supp. 354, 355 (N.D.N.Y.1988). Kregler argues that the issue of whether Schwam and Keenaghan are subordinates is based on factual contentions that cannot be decided until he has an opportunity to develop a full record. However, in the Second Amend Complaint, Kregler concedes that both Schwam and Keenaghan were subordinates of Hearn. (*See* Compl. ¶¶ 7–8.) Because it is undisputed that Schwam and Keenaghan were subordinates and thus lacked the authority to prevent the alleged constitutional viola-

---

4. Schwam was the Director of the Marshal's Bureau of the DOI, directly reporting to Hearn. Keenaghan was an investor in the Background Unit of the Marshal's Bureau, directly reporting to Schwam.

tion caused by their supervisor, Kregler's claim of deliberate indifference fails as a matter of law.[5]

Kregler maintains that deliberate indifference is not the only theory of liability that he advances against Schwam and Keenaghan. Rather, he argues that Schwam and Keenaghan were "primary participants in the illegal conduct as aiders and abettors of that conduct." (Pl. Mem. 15.) Kregler, however, offers no evidence in support of such a theory other than his conclusory statements. The only reference the Court can find in the record relating to "aiding and abetting" is Kregler's allegation in the Second Amended Complaint stating that "while acting under color of law, the individual defendants, and those whose were acting at their direction ... aided, abetted and participated in the violation by the other individual defendants of Kregler's rights, because he expressed his opinions with regard to matters of public concern." (Compl. ¶ 80.) Yet there is no specific identification of which individual defendants aided and abetted in the purported constitutional violation against Kregler. This is not enough to defeat a motion to dismiss, let alone a motion for summary judgment. *See Niagara Mohawk Power Corp.*, 315 F.3d at 175.

Furthermore, Kregler's allegation that Schwam and Keenaghan misused their authority to cause the rejection of his application is wholly inconsistent with his allegation that Garcia and Naberezny were the individuals who colluded to cause the rejection of his application. (*Compare* Compl. ¶ 43 (allegations regarding Garcia and Naberezny) *with* Compl. ¶ 71 (allegations regarding Schwam and Keenaghan).) Kregler offers no explanation to reconcile

these two separate and conflicting allegations. He cannot have it both ways. *See Shabazz v. Pico*, 994 F.Supp. 460, 470 (S.D.N.Y.1998) ("[W]hen the facts alleged are so contradictory that doubt is cast upon their plausibility, [the court may] pierce the veil of the complaint's factual allegations, dispose of some improbable allegations, and dismiss the claim." (internal quotation marks omitted)). Kregler's entire theory of liability as against Naberezny rests on the argument that she and Garcia had a personal relationship and together they agreed to cause the termination of Kregler's application by providing false information to Hearn. That is irreconcilable with the allegation that Schwam and Keenaghan were the parties who caused the rejection because of Kregler's endorsement of Morgenthau. Accordingly, because no genuine issue of material fact exists as to the personal involvement of Schwam and Keenaghan, they are dismissed from this action.

## C. *CLAIMS AGAINST GROGAN*

In the Second Amended Complaint, Kregler alleges that Grogan was upset about Kregler's endorsement of Morgenthau and that he and Garcia "agreed to take steps to prevent Kregler's appointment in retaliation for Kregler's endorsement." (Compl. ¶¶ 29, 39.) Grogan argues that the claims against him must be dismissed because of his lack of personal involvement, namely his inability to remedy the alleged constitutional violation.

■ As with Schwam and Keenaghan, Kregler maintains that the "law of the case" doctrine bars dismissal of his claims as against Grogan. The Court finds that

---

**5.** Once again Kregler argues that even if Schwam and Keenaghan are subordinates, as law enforcement officers, they have a duty to intervene. Further, Kregler contends that as City employees, Schwam and Keenaghan have an affirmative duty to intervene to prevent an illegality under the Mayor's Executive Order 16. In the Order, the Court already considered and rejected such arguments. (*See* Order at 13 n. 4.)

doctrine inapplicable to the case at hand. "The law of the case doctrine prevents relitigation of an issue decided at an earlier point in an action only if the 'court was ever squarely presented with the question.'" *Ancile Inv. Co. v. Archer Daniels Midland Co.*, No. 08 Civ. 9492, 2011 WL 3516128, at *1 (S.D.N.Y. Aug. 3, 2011) (*citing Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 44 (2d Cir.2005)). Because the Second Circuit was never squarely presented with the question as to whether Grogan lacked the authority to take action to remedy the wrong, the doctrine is not controlling. Therefore, Grogan is not precluded from advancing that argument here.

At the Rule 12(i) Hearing, Kregler testified that he had no evidence to suggest that Grogan was a decision maker with respect to his application for City Marshal or that Grogan had any conversation with personnel at DOI concerning the application. (*See* Hr'g Tr. 84:11–85:6, July 16, 2009.) Even if Grogan were aware of the purported constitutional violation, Kregler fails to explain how Grogan, an employee of the FDNY, can be held personally liable for a final decision made solely by the DOI commissioner. Accordingly, because Kregler has not established any genuine issues of material fact as to Grogan's personal involvement in the alleged constitutional violation committed against him, the claims against Grogan are dismissed.

### D. CLAIMS AGAINST NABEREZNY

■ In her motion to dismiss, Naberezny argues that the claims against her are time barred. "[T]he timeliness of a discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory decision, not from the date the decision takes effect." *O'Malley v. GTE Serv. Corp.*, 758 F.2d 818, 820 (2d Cir.1985); *see also Pearl v.*

*City of Long Beach*, 296 F.3d 76, 80 (2d Cir.2002). It is undisputed that the decision to terminate Kregler's application for the position of City Marshal occurred on or about November 14, 2005, and that he was informed of that decision on March 10, 2006. Accordingly, since the applicable statute of limitations for a § 1983 is three years, *see Owens v. Okure*, 488 U.S. 235, 251, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989), the limitation period for Kregler's claims expired as of March 10, 2009.

■ Although Kregler concedes that Naberezny was added as a defendant outside the three-year statute of limitation, he asserts that the claims against her are timely because they "relate back" to the claims in the original complaint. In order for a complaint that adds a new defendant to relate back to the original complaint for limitations purposes, the following requirements must be satisfied: (1) both complaints must arise out of the same conduct, transaction, or occurrence; (2) the additional defendant must have been omitted from the original complaint by mistake; and (3) the additional defendant must not be prejudiced by the delay. Fed.R.Civ.P. 15(c)(1). Rule 15(c) of the Federal Rules also requires that the new defendant have actual or constructive knowledge that she would have been named but for the plaintiff's mistake. *See Tsering v. Wong*, No. 08 Civ. 5633, 2008 WL 4525471, at *6 (S.D.N.Y. Oct. 3, 2008).

The notice required must be such that a reasonably prudent person ought to have been able to anticipate or should have expected that the character of the originally pleaded claim might be altered or that other aspects of the conduct, transaction or occurrence set forth in the original pleading might be called into question.

*Id. (citing Pemrick v. Stracher,* No. 92 Civ. 959, 2005 WL 2921621, at *7 (E.D.N.Y. Nov. 4, 2005)).

In assessing Naberezny's motion to dismiss, the Court found that the record before it was not developed as to whether Naberezny had been prejudiced by the delay in naming her as a defendant. (*See* Order at 18.) Accordingly, the Court directed the parties to engage in discovery limited to the issues of whether (1) Naberezny had actual or constructive knowledge of this action within the time period of the applicable statute of limitations and (2) she could have reasonably expected that she might be named as a defendant. At her deposition, Naberezny testified that she was not aware of the original complaint or the First Amended Complaint filed in this action. In response, Kregler relies on *Abdell v. City of New York* for the proposition that because Naberezny is represented by the Corporation Counsel of the City of New York ("Corporation Counsel"), the same attorney representing the other defendants, their knowledge of the lawsuit within the applicable statute of limitations is imputed to Naberezny. 759 F.Supp.2d 450, 455 (S.D.N.Y.2010).

Kregler's argument fails for several reasons. Primarily, it is based on dicta. In *Abdell,* the Court found that the defendant had actual knowledge of the action within the limitations period and therefore it was unnecessary to impute the knowledge of counsel to the new defendant. *See id.* As previously stated, Kregler makes no showing that Naberezny was aware of the lawsuit until she was named in the Second Amended Complaint, which was after the expiration of the statute of limitations.

In *Berry v. Village of Millbrook,* however, the Court applied the constructive notice doctrine and held that the claims against the new defendant related back to the initial complaint. No. 09 Civ. 4234, 2010 WL 3932289, at *5 (S.D.N.Y. Sept. 29, 2010). The court reasoned that, because the defendant had been clearly identified in the initial complaint, the attorney knew or should have known that the additional defendant would be added to the existing lawsuit. *Id.* Unlike *Berry,* Naberezny's name did not appear in either the initial complaint or the First Amended Complaint. It was not until his filing of the Second Amended Complaint on July 9, 2010, more than three years after the alleged violation occurred, that Kregler named Naberezny as a defendant. Nonetheless, at the Rule 12(i) Hearing, upon learning that Naberezny was the individual who had the personal relationship with Garcia not Hearn, Kregler's counsel requested the Court to "substitute in Naberezny for Gill Hearn." (Hr'g Tr. 26:20–21, July 28, 2009.) Even assuming that Corporation Counsel should have been aware at this juncture of the lawsuit that Naberezny would be added as a defendant, Kregler's counsel did not make this application until July 28, 2009—more than four months after the statute of limitations had run. Accordingly, because no genuine issue of material fact exists to suggest that Naberezny had actual or constructive knowledge of this action within the time period of the applicable statute of limitations, the claims against Naberezny are dismissed as a matter of law.

## IV. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the motion (Docket No. 56) of defendants Jayme Naberezny, Rose Gill Hearn, Keith Schwam, Darren Keenaghan and Brian Grogan is GRANTED; and it is further

**ORDERED** that plaintiff William Kregler and remaining defendants City of New York and Louis Garcia shall confer and prepare a proposed Case Management

Plan in the form provided on the Court's website, to be submitted to the Court at an initial conference on this action scheduled for December 2, 2011 at 10:45 a.m.

The Clerk of Court is directed to terminate any pending motions.

**SO ORDERED.**