Kristopher **OKWEDY** and **Keyword Ministries, Inc.,** Plaintiffs–Appellants,

v.

City of **NEW YORK,** Defendant–Appellee.

No. 05–6217.

United States Court of Appeals, Second Circuit.

Aug. 15, 2006.

Stephen M. Crampton (Brian Fahling and Michael J. DePrimo, on the brief), AFA Center for Law & Policy, Tupelo, MS, for the Appellants.

Alan G. Krams (for Michael A. Cardozo, Corporation Counsel of the City of New York; Kristin M. Helmers, of counsel), New York, NY, for the Appellee.

PRESENT: Hon. CHESTER J. STRAUB, Hon. ROSEMARY S. POOLER and Hon. ROBERT D. SACK, Circuit Judges.

### SUMMARY ORDER

Plaintiffs–Appellants, Kristopher Okwedy and Keyword Ministries, Inc., appeal from an order of the District Court, entered October 12, 2005, which granted defendant-appellee City of New York's motion for summary judgment and denied plaintiffs' motion for leave to amend the complaint. This case was before the District Court following a June 25, 2003, remand order by this Court. We assume that the parties are familiar with the facts, the procedural history, our earlier decision, and the scope of the issues presented on appeal. *See Okwedy v. Molinari*, 333 F.3d 339 (2d Cir.2003); 69 Fed.Appx. 482 (2d Cir.2003).

We conclude that the District Court properly granted summary judgment on the facial and as-applied constitutionality of Section 8–101 of New York City's Administrative Code, known as the Human Rights Law ("Section 8–101"). *See* N.Y.C. Admin. Code § 8–101. Section 8–101 states an official policy against "prejudice, intolerance, [and] bigotry" and establishes an agency to combat discrimination in housing, employment, and public accommodations, as well as "to take other actions against prejudice, intolerance, bigotry, discrimination and bias-related violence or harassment." *See id.* Section 8–101 does not itself prohibit or regulate speech.

■ Indeed, plaintiffs do not argue that the text of the statute is unconstitutional but rather that officials have construed it in a way that makes it so. Although plaintiffs are correct that we must look beyond the text to "authoritative constructions" of the law, *see Forsyth Cty., Ga. v. Nationalist Mvmt.*, 505 U.S. 123, 131, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992), plaintiffs fail to cite any construction that supports their theory that the City interprets the Human Rights Law to suppress speech that conflicts with its anti-discrimination policy. Plaintiffs claim that statements made by defense counsel during the course of trial are authoritative constructions of the law on par with the text of the statute. But these statements are legal theories rather than facts, and as such cannot constitute binding judicial admissions attributable to the City. *See New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 24 (4th Cir.1963) ("The doctrine of judicial admissions has never been applied to counsel's statement of his conception of the legal theory of the case.").

■ We further conclude that the District Court properly entered summary judgment for defendant on the as-applied constitutionality of Section 8–101. In order to prevail on an as-applied challenge, plaintiffs must show that they were injured "as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). Plaintiffs have offered no evidence that any City official saw himself as enforcing Section 8–101 in responding to plaintiffs' billboards.*

■ Even if we were to conclude that city officials acted pursuant to a policy or

---

* In our earlier summary order, we noted that "plaintiffs acknowledge that [Borough President] Molinari acted pursuant to the general policy against 'intolerance' and 'bigotry' expressed in New York law and the *New York City Administrative Code § 8–101*." *Okwedy*, 69 Fed.Appx. at 484. Insofar as that language may have suggested that we read Section 8–101 to authorize or require the City's response to the billboards, we take this opportunity to clarify that such is not the case. Rather, our earlier order was meant to explain that plaintiffs had produced no evidence that Molinari's intent, in criticizing their billboards, was to suppress religious expression, and that, to the contrary, Molinari's actions

custom—whether contained in Section 8–101 or elsewhere—of criticizing speech deemed to be intolerant, such a policy or custom would not violate the First Amendment, as applied to the states through the Fourteenth Amendment. When the government speaks, it is not bound by principles of viewpoint neutrality and can make persuasive arguments for its own favored point of view. *See Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 833, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995); *Downs v. L.A. Unified Sch. Dist.*, 228 F.3d 1003, 1014 (9th Cir.2000); *Connell v. Signoracci*, 153 F.3d 74, 82 (2d Cir.1998) ("The Mayor is privileged, for example, to organize a rally against pornography, to call the topless bars a 'black eye on the community' and a 'slimy business,' and to call for a boycott of the establishments."). Such speech is permissible as long as the government does not "threat[en], coerc[e], or intimidat[e]." *See X–Men Sec., Inc. v. Pataki*, 196 F.3d 56, 71 (2d Cir.1999). Government speech criticizing Okwedy and his message, alone, does not constitute "viewpoint discrimination" or violate the First Amendment.

■ Finally, we conclude that the District Court properly denied plaintiffs' motion for leave to amend the complaint as futile. The District Court previously dismissed many of plaintiffs' First Amendment claims, and this Court affirmed. Plaintiffs now seek to revive these claims on the basis of modified facts. The new allegations include (1) statements concerning the City's interpretation of Section 8–101, and (2) the visit by New York City's Bias Crimes Task Force to Keyword Ministries. Plaintiffs' first new allegation, that the City called plaintiffs' billboards displaying Bible verses "bigoted," is the functional equivalent of the statement we deemed inactionable in our prior summary

order: that the message espoused by the billboards was "intolerant." *See Okwedy*, 69 Fed.Appx. at 484. Because neither statement "create[s] a denominational preference or violate[s] the *Lemon* test," allowing plaintiffs to amend their complaint to reassert an Establishment Clause claim would be futile. *Id.* at 485 (citing *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971)).

■ Plaintiffs also seek to amend their complaint to allege that in visiting Keyword Ministries, the police were implementing the City's policy underlying Section 8–101 and trying to suppress plaintiffs' speech. However, "a municipality can be held liable [under Section 1983] only if the alleged unconstitutional action implements an official policy or custom [of the municipality], whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Morris v. Lindau*, 196 F.3d 102, 111 (2d Cir.1999) (internal quotation marks omitted). "A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." *Dwares v. New York*, 985 F.2d 94, 100 (2d Cir. 1993). Plaintiffs' new allegations, even if proven, would not indicate any official policing policy sufficient to support a claim under Section 1983. As a result, we conclude that the District Court did not exceed its allowable discretion in denying leave to amend the complaint.

For the foregoing reasons, we **AFFIRM** the judgment of the District Court.

---

were supported by the city's *"general* policy" against discrimination, of which Section 8–

101 is one expression. *Id.* at 484 (emphasis added).