**Elaine L. CHAO, Secretary of Labor, United States Department of Labor, Plaintiffs,**

v.

**INTERNATIONAL BROTHERHOOD OF INDUSTRIAL WORKERS HEALTH AND WELFARE FUND, Defendants.**

No. 98–CV–2041(JS)(ARL).

United States District Court, E.D. New York.

Signed March 31, 2015.

Suzanne Lucia Demitrio, Esq., Kevin E. Crowley, Esq., Mark A. Holbert, Esq., Patricia M. Rodenhausen, Esq., U.S. Department of Labor, Office of the Solicitor, Region II, New York, NY, for Plaintiff.

Sally L. Schneider, Esq., Proskauer Rose LLP, New York, NY, for Defendant International Brotherhood of Industrial Workers Health and Welfare Fund.

Austin R. Graff, Esq., The Scher Law Firm, LLP, Carle Place, NY, Robert S. Nayberg, Esq., Law Offices of Martin H. Scher, Carle Place, NY, for Interested Party EHPA.

Barry E. Warner, Esq., Mark David Harris, Esq., Proskauer Rose LLP, New York, NY, for Interested Party Insurance Trust Fund of the National Organization of Industrial Trade Unions.

## MEMORANDUM & ORDER

SEYBERT, District Judge:

Currently pending before the Court are two Reports and Recommendations issued by Magistrate Judge Arlene R. Lindsay. The first was filed on November 21, 2014 ("the November R & R") and the second on February 10, 2015 (the "February R & R"). For the following reasons, the November R & R (Docket Entry 269) and the February R & R (Docket Entry 274) are ADOPTED in their entirety.

## BACKGROUND

### I. *Factual Background*

The Court assumes familiarity with the underlying facts of this case, which are described in the Court's prior orders. Briefly, however, the Secretary of Labor ("Plaintiff") commenced this action on March 3, 1998 pursuant to provisions of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et. seq.* (March 29, 2002 Memorandum and Decision (the "March 2002 Order"), Docket Entry 253–10, at 2.) Plaintiff alleged that certain individual defendants breached their fiduciary duties to the International Brotherhood of Industrial Workers Health and Welfare Fund (the "BIW Fund") by doing business with an individual named Clarke Lasky, a "known embezzler." *Chao v. Merino,* 452 F.3d 174, 177 (2d Cir.2006). The BIW Fund was an ERISA employee welfare benefit plan that existed to provide healthcare and other benefits to its participants. (March 2002 Order at 3.)

Clarke Lasky ("Lasky") was the president and owner of Employee Health Plan Administrators ("EHPA"), a company that represented employers in their relations with employee benefit funds. *Chao,* 452 F.3d at 177. "In 1984, he was convicted of embezzling $62,208 from an employee benefit plan." Lasky was sentenced to six years in prison. (March 2002 Order at 5.) In 1991, after his release from prison, the BIW Fund began doing business with Lasky and EHPA. Unfortunately, in 1994, Lasky started keeping employer contributions to the BIW Fund for himself. (March 2002 Order at 6–7.) Although he subsequently paid back a portion of the money, Lasky was again indicted for embezzlement in 1997 and was sentenced to twenty-seven months in prison and ordered to pay restitution of $365,000.

(March 2002 Order at 8–9; February R & R at 2.)

After extensive litigation in this action, the Court concluded that EHPA was simply an alter ego of Lasky; that Lasky violated his fiduciary duties under ERISA by failing to remit benefit contributions to the BIW Fund; and that the administrator and the trustees of the BIW Fund also violated their fiduciary duties under ERISA. (July 13, 2012 Order ("July 2012 Order"), Docket Entry 229, at 1.)

As a result of this litigation, the Fund no longer retained any trustees to manage and control its assets. Therefore, this Court took control over the distribution of the BIW Fund's limited remaining assets and retained jurisdiction for that purpose. (July 2012 Order at 2.) To insure that claims against the BIW Fund were resolved in a coherent and equitable fashion, the order also barred the initiation of any action against the Independent Fiduciary or the BIW Fund without of prior authorization of the Court. (July 2012 Order at 2.)

### A. Lasky's State Court Action

In 1995, the BIW Fund brought an action against Lasky, his wife, and EHPA seeking to restrain them from selling the Laskys' house, which was pledged as security under an agreement to pay the BIW Fund back for the money Lasky took (the "State Court Action"). (See Compl., Brotherhood of Industrial Workers Health and Welfare Fund, Index No. 95–10078, Docket Entry 235–9.) The Laskys and EHPA filed a counterclaimed for breach of contract, asserting that the BIW Fund was contractually obligated to maintain a $410,000 reserve Fund for their benefit, but failed to do so. After the BIW Fund did not respond to discovery requests in the State Court Action, the court ruled in favor of the Laskys on their counterclaim for breach of contract. (See Short Form

Order, Brotherhood of Industrial Workers Health and Welfare Fund, Index No. 95–10078 ("Short Form Order"), Docket Entry 235–29, at 4.) The matter was referred for an inquest and judgment was entered against the BIW Fund in the amount of $ 741,866.75. (Judgment, Brotherhood of Industrial Workers Health and Welfare Fund, Index No. 95–10078, Docket Entry 245–2.)

In 2006, EHPA filed an action in Nassau County Supreme Court seeking to enforce its judgment against the BIW Fund. (EHPA's Ltr. Mot., Docket Entry 227, at 1.) EHPA then sought permission from this Court to continue its action in Nassau County Supreme Court. However, the EHPA was ordered to seek a stay of its 2006 Nassau County Supreme Court action and bring its claim before this Court. (July 2012 Order at 2.)

### II. Procedural Background

On April 23, 2014, the Court-appointed Independent Fiduciary who administers the BIW Fund proposed a plan to dispose of the BIW Fund's remaining $89,100 in assets. (See October 21, 2011 Ltr., Docket Entry 252.) On May 5, 2014, EHPA filed a motion Opposing the Independent Fiduciary's plan and seeking an order declaring that the Insurance Trust Fund of the National Organization of Industrial Trade Unions (the "NOITU Fund") to be the legal successor of the BIW Fund. (Docket Entry 253.) EHPA therefore seeks to hold the NOITU Fund liable for the EHPA's judgment in the State Court Action. On June 30, 2014, the NOITU Fund submitted a cross-motion seeking an order declaring that it is not the successor to the BIW Fund. (Docket Entry 262.) Both EHPA's motion and NOITU Fund's motion were referred to Judge Lindsay for a Report and Recommendation on whether

they should be granted. (*See* May 27, 2014 Electronic Order.)

On November 21, 2014, Judge Lindsay issued her November R & R recommending that the pending motions be deferred so that the Independent Fiduciary could retain counsel to advise him about certain legal and tax issues raised in the motions. (November R & R at 1.) No objections were filed to the November R & R. However, the NOITU Fund asked the Court not defer deciding whether the NOITU Fund was the BIW's legal successor. (*See* Response to November R & R, Docket Entry 270.) Judge Lindsay granted the NOITU Funds request and issued the February R & R recommending that the Court decide that the NOITU Fund is not the legal successor of the BIW Fund. (February R & R at 16.) EHPA filed its objections to Judge Lindsay's February R & R on February 23, 2014. (Docket Entry 275.) In its objections EHPA makes the following arguments: (1) the Court did not give sufficient weight to letters filed by David Silverman, the BIW Fund's former Independent Fiduciary; (2) Silverman's statements are binding on the BIW Fund; (3) the fact that Proskauer Rose LLP represented both the BIW Fund and the NOITU Fund is evidence of successorship; (4) the fact that the NOITU Fund previously sought assets from the BIW Fund is evidence of successorship; (5) Judge Lindsay did not specify what standard she used to determine successorship; and (6) more discovery is needed. (EHPA Br., Docket Entry 275, at 1–11.) For the forgoing reasons, the Court overrules all of EHPA's objections and adopts both Judge Lindsay's February R & R and her November R & R in their entirety.

## DISCUSSION

### I. The February R & R

The Court will first discuss the relevant standard of review before addressing EHPA's objections to the February R & R.

### A. Standard of Review

■■■ "When evaluating the report and recommendation of a magistrate judge, the district court may adopt those portions of the report to which no objections have been made and which are not facially erroneous." *Walker v. Vaughan,* 216 F.Supp.2d 290, 291 (S.D.N.Y.2002) (citations omitted). A party may serve and file specific, written objections to a magistrate's report and recommendation within fourteen days of receiving the recommended disposition. *See* Fed. R. Civ. P. 72(b)(2). Upon receiving any timely objections to the magistrate's recommendation, the district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3). A party that objects to a report and recommendation must point out "the specific portions of the report and recommendation to which they object." *See Barratt v. Joie,* No. 96–CV–0324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002) (citation omitted).

■■■ When a party raises an objection to a magistrate judge's report, the Court must conduct a *de novo* review of any contested sections of the report. *See Pizarro v. Bartlett,* 776 F.Supp. 815, 817 (S.D.N.Y.1991). But if a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Pall Corp. v. Entegris, Inc.,* 249 F.R.D. 48, 51 (E.D.N.Y.2008) (internal quotation marks and citation omitted). Furthermore, even in a *de novo* review of a party's specific objections, the Court ordinarily will not consider "arguments, case law and/or evidentiary material which could have been, but [were] not, presented to the magistrate

judge in the first instance." *Kennedy v. Adamo*, No. 02–CV–1776, 2006 WL 3704784, at *1 (E.D.N.Y. Sept. 1, 2006) (internal quotation marks and citation omitted).

### · B. *The Successor Liability Standard*

 EHPA argues that Judge Lindsay erred by not setting forth the standard she used to decide the issue of successor liability in her February R & R. (EHPA's Br. at 11.) The Court Disagrees.

Judge Lindsay acknowledges in her February R & R that the issue of successor liability between two non-profit employee benefit trusts was likely one of first impression.[1] Judge Lindsay therefore discussed two potential standards in her February R & R that could be used to decide the successor issue: (1) the Federal common law rule governing corporate successor liability and (2) the standard articulated in *Fall River Dyeing & Finishing Corp. v. N.L.R.B.*, 482 U.S. 27, 43, 107 S.Ct. 2225, 2236, 96 L.Ed.2d 22 (1987), which is used to determine whether a company has an obligation to bargain with a union that represented the employees of the company's predecessor. (February R & R at 10–11.) Judge Lindsay determined that, under either standard, the NOITU Fund was not the successor of the BIW Fund. (February R & R at 11.)

 The Court notes that the standard governing successor liability in the corporate context, although not a perfect fit, is more appropriate for determining successor liability between two non-profit employee benefit trusts. Under that test, "[a] corporation that acquires the assets of another corporation does not automatically assume the liabilities of the predecessor corporation." *Kessenich v. Raynor*, 120 F.Supp.2d 242, 255 (E.D.N.Y.2000); *see*

also *New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir.2006). "Liability is assumed only if one of four criteria is met: (1) the successor corporation either expressly or impliedly agrees to assume the predecessor's liabilities; (2) the transaction is a de facto merger; (3) the successor may be considered a mere continuation of the predecessor; or (4) the transaction is fraudulent." *Kessenich*, 120 F.Supp.2d at 255. The relevant question in this case is whether a de facto merger occurred between the BIW Fund and the NOITU Fund. "For a de facto merger to occur, there must be a continuity of the successor and predecessor [ ], as evidenced by: (1) continuity of ownership; (2) a cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible; (3) assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor; and (4) a continuity of management, personnel, physical location, assets, and general business operations...." *Ulanet v. D'Artagnan, Inc.*, 170 F.Supp.2d 356, 358 (E.D.N.Y.2001) (citation omitted) (ellipsis in original). As Judge Lindsay discussed in her February R & R, all of the credible evidence demonstrates that such a merger did not take place. In the late 1990's, the BIW Fund was suffering financially. The NOITU Fund therefore allowed numerous BIW Fund members to transfer to its Fund so that they could continue to receive healthcare benefits. (*See* July 25, 2006 Ltr., Docket Entry 253–16.) There is insufficient evidence in the record to support the conclusion that the NOITU Fund became the successor of the BIW Fund. Therefore, EHPA's objections concerning the standard used by Judge Lindsay to determine successor liability is OVERRULED.

---

**1.** The Court has been unable to locate any authority addressing the test for successor liability when the entities at issue are non-profit employee benefit funds.

## C. Weight Afforded to Silverman's Statements

EHPA argues that Judge Lindsay did not give sufficient weight in her February R & R to certain statements made by David Silverman, the BIW Fund's former Independent Fiduciary. (EHPA's Br. at 2, 7.) EHPA's objections, however, must be rejected because (1) they duplicative of the arguments it made in its original moving papers and (2) Judge Lindsay considered and rejected EHPA's interpretation of Silverman's letters in her February R & R. (February R & R at 14–16.) "It is improper for an objecting party to attempt to relitigate the entire content of the hearing before the Magistrate Judge by submitting papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge." *Camardo v. Gen. Motors Hourly–Rate Emps. Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992). Thus, when a party raises arguments that were already addressed by the Magistrate Judge, the District Court need only review the Magistrate Judge's decision for clear error. *See Vega v. Artuz,* No. 97–CV–3775, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)

David Silverman, who was formerly the BIW Fund's Independent Fiduciary, stated in a number of letters to the Court that the BIW Fund was "taken over" by the NOITU Fund. (*See, e.g.,* Dec. 22, 2004 Ltr., Docket Entry 253–15.) EHPA relied heavily upon these statements, both in its original motions and in its objections. However, Judge Lindsay discussed Silverman's letters in detail in her February R & R and found that they did not raise a material question of fact concerning NOITU's status as a successor. Judge Lindsay specifically reasoned that: (1) Silverman was not involved with the transfer of members from the BIW Fund to the NOITU Fund, and (2) Silverman's informal description of the NOITU Fund "taking over" the BIW Fund was insufficient evidence to attach any legal significance to. (*See* February R & R at 13–14.) The Court agrees that the Board Minutes of the NOITU Fund, bolstered by the Affidavit of Candice Stark provides substantial evidence that the NOITU Fund merely picked up members of the BIW Fund whose healthcare needs could no longer be met, and did so without taking further steps to become the BIW Fund's legal successor. (*See* NOITU Fund March 19, 1996 Board Minutes, Docket Entry 262–3, at 13; Affidavit of Candice Stark, Docket Entry 262–2.) The Board Minutes, dated March 19, 1996 are explicit that "the NOITU Fund shall not accept any assets of the BIW Fund and [ ] the NOITU Fund is not and shall not be the "successor" to the BIW Fund. (NOITU Fund March 19, 1996 Board Minutes at 13.) Judge Lindsay did not err by giving little weight to Silverman's statements. Therefore EHPA's objections concerning the weight afforded Silverman's statements are OVERRULED.

The Court also rejects EHPA's argument that Silverman's statements are binding on the BIW Fund (EHPA Br. at 7.). EHPA made the same argument in its original moving papers and the argument was addressed and rejected in Judge Lindsay's February R & R. (*See* Supp. Br. to Confirm EHPA's Distribution Plan, Docket Entry 253–18, at 14–15; February R & R at 13–15.) Having reviewed Judge Lindsay's analysis for clear error, the Court OVERRULES all EHPA's objections concerning the legal effect of Silverman's statements.

## D. The NOIU Fund's Requests for Compensation from the BIW Fund

EHPA argues that Judge Lindsay failed to consider that the NOITU Fund

sought compensation from the BIW Fund before ruling that the NOITU Fund was not the BIW Fund's legal successor. (EHPA Br. at 5.) Although the NOITU Fund did seek assets from the BIW Fund, it only sought compensation for money that the NOITU Fund spent to cover healthcare costs for BIW Fund members before they transferred to the NOITU Fund. Starting in March 1996, the NOITU Fund paid for medical benefits for BIW members who wanted to join the NOITU Fund. However those BIW Members did not formally switch to the NOITU Fund until June 1996. (See Sept. 3, 2004 Ltr., Docket Entry 253-14, at 2.) Thus, the NOITU Fund paid for three months of medical benefits for certain BIW members gratuitously and now only seeks reimbursement. Seeking the costs that the BIW Fund should have paid on behalf of its members is not evidence that a merger took place. Therefore, EHPA's objection concerning the NOITU Fund seeking reimbursement of certain monies is OVERRULED.

### E. Joint Representation

EHPA asserts that Judge Lindsay did not consider that Proskauer Rose LLP ("Proskauer") previously represented both the BIW Fund and the NOITU Fund as evidence of successor liability. (EHPA's Br. at 8.) This argument is ridiculous and without merit. The mere fact that a law firm undertook a joint representation of two parties whose interests were aligned is not evidence that one party is the legal successor of the other. Moreover, Judge Lindsay already considered and rejected this same argument. (February R & R at 16.) Therefore EHPA's objection regarding the significance of Proskauer's joint representation is OVERRULED.

### F. Additional Discovery

EHPA claims that more discovery is necessary to clarify an apparent contra-

diction between Candice Stark's affidavit and one of Silverman's letters. Specifically, EHPA points to the difference between Stark's assertion that only 1,100 members transferred from the BIW Fund to the NOITU Fund, and Silverman's statement in a September 2004 letter that he saw a list of 3,268 members who transferred from one fund to the other. (See EHPA's Br. at 10.) Judge Lindsay found in her February R & R that, although this conflicting information "may raise a question of fact as to the number of transferring participants," it did not raise a question of fact regarding the legal question of successorship. (February R & R at 15–16.) The Court agrees with Judge Lindsay's conclusion. Even if 3,268 former BIW Fund members—rather than 1,100—joined the NOITU Fund, it is undisputed that (1) the NOITU did not receive assets from the BIW Fund, (2) the BIW Fund still exists as a legal entity to this day, and (3) there is significant documentary evidence showing that the NOITU Fund did not seek to merge with the BIW Fund. Thus, all of the credible evidence points to the conclusion that the NOITU Fund is not the BIW Fund's legal successor.

The Court is not persuaded that additional discovery will lead to a different conclusion. This case is over a decade old and Silverman—the person who was most knowledgeable about this apparent conflict—unfortunately passed away. There is no reason is prolong this case further. Therefore, EHPA's objection regarding additional discovery is OVERRULED.

## II. The November R & R

In her November R & R, Judge Lindsay deferred ruling on the parties' motions concerning the Independent Fiduciary's proposed distribution plan for the BIW Fund's remaining assets. Judge Lindsay recommended that counsel first be ap-

pointed to advise the BIW Fund's Independent Fiduciary concerning certain legal and tax issues raised in the parties' applications related to the distribution plan. (November R & R at 1.) Judge Lindsay further recommended that "counsel fees be taken from the available monies in the BIW Fund." (November R & R at 1.)

In reviewing an R & R, a district court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). If no timely objections have been made, the "court need only satisfy itself that there is no clear error on the face of the record." *Urena v. New York,* 160 F.Supp.2d 606, 609–10 (S.D.N.Y. 2001) (internal quotation marks and citation omitted).

Objections to Judge Lindsay's November R & R were due within fourteen days of service of the R & R. The time for filing objections has expired, and no party has objected.[2] Accordingly, all objections are hereby deemed to have been waived.

Upon careful review and consideration, the Court finds Judge Lindsay's November R & R to be well-reasoned and free of clear error. The Court therefore ADOPTS Judge Lindsay's November R & R in its entirety. The Court will set a conference shortly to discuss appointing counsel for the Independent Fiduciary.

### CONCLUSION

For the foregoing reasons Judge Lindsay's November R & R (Docket Entry 269) and her February R & R (Docket Entry 274) are both ADOPTED in their entirety and EHPA'S objections to Judge Lindsay's February R & R are OVERRULED. The Court will set a conference shortly to discuss appointing counsel for the BIW

Fund's Independent Fiduciary so that he can advise the Independent Fiduciary about the proposed distribution plans and the litigants' pending applications. The Court DEFERS RULING at this time on the balance of the parties' applications. (Docket Entries 253, 262.)

SO ORDERED.

ELAINE L. CHAO, Secretary of Labor, United States Department of Labor,

Plaintiff,

-against-

JOSEPH MERINO, HELEN WILLIAMS, DONALD GANCIO, SANDRA BRIAND, CLARKE LASKY, and INTERNATIONAL BROTHERHOOD OF INDUSTRIAL WORKERS HEALTH AND WELFARE FUND,

Defendants.

### REPORT AND RECOMMENDATION

LINDSAY, United States Magistrate Judge:

Before the Court, on referral from District Judge Seybert, are (1) the motion by Employees Health Plan Administrators ("EHPA") for an Order declaring that nonparty National Organization of Industrial Trade Unions (the "NOITU Fund") is the legal successor of the Brotherhood of Industrial Workers Health and Welfare Fund (the "BIW Fund") [DE 253]; and (2) the cross-motion by the NOITU Fund for a declaration that it is not the successor of the BIW Fund [DE 262]. For the reasons set forth below, the Court respectfully reports and recommends that the BIW Fund's motion be denied and the NOITU Fund's cross-motion be granted.

---

**2.** As discussed above, the NOITU Fund did file a response to Judge Lindsay's November R & R, (Docket Entry 271), which led Judge Lindsay to rule on the issue of successorship in her February R & R. However, neither the NOITU Fund nor EHPA filed formal objections to the November R & R.

## I. BACKGROUND

The Court assumes familiarity with the facts and procedural history of this case and recites only those facts relevant to the resolution of the instant motions.

### A. Procedural History

The BIW Fund was an employee welfare benefit plan established on March 24, 1972 pursuant to a trust agreement. The purpose of the Fund was to provide benefits to its participants with respect to accident, health care, dental and visual benefits.

In March 1998, the Secretary of Labor brought the instant action alleging that the individual defendants, while acting as fiduciaries of the BIW Fund, breached their fiduciary duties to the Fund. Specifically, in January of 1998, defendant Clarke Lasky ("Lasky"), the sole principal of EHPA—who in that role collected and remitted contributions paid by employers to the BIW Fund—pled guilty to embezzling monies from the BIW Fund. He was sentenced to 27 months in prison and ordered to pay restitution of $365,000. The Second Circuit later affirmed the conviction and sentence.

In the instant action, the Secretary alleged that defendants breached their fiduciary duties by, *inter alia,* causing, permitting and failing to remedy Lasky's embezzlement of assets from the BIW Fund. The Secretary prevailed in partial summary judgment, trial, and appeal, and defendants were ordered to pay restitution. Several fiduciaries (excluding Lasky, who was held to be the alter ego of EHPA) restored $100,000 to the BIW Fund. Approximately $82,100 of that sum remains, after the Court approved payment of the Funds' administrative expenses.

Thereafter, the Court-appointed Independent Fiduciary who administers the BIW Fund proposed a distribution plan to dispose of the Fund's remaining assets. DE 252. After conferencing with the parties on April 23, 2014, Judge Seybert directed the Independent Fiduciary to file a formal motion and referred the matter to the undersigned. DE 251; *see also* Apr. 23, 2014 Tr.; Electronic Order dated May 27, 2014.

The following motions were then filed: (1) the motion by the Court-appointed Independent Fiduciary of the BIW Fund for Court approval of her proposed distribution plan [DE 252]; (2) the motion by EHPA for Court approval of an alternative distribution plan and for an Order declaring that the NOITU Fund is the legal successor of the BIW Fund [DE 253]; and (3) the cross-motion by the NOITU Fund for a declaration that it is not the successor of the BIW Fund [DE 262]. On November 21, 2014, this Court issued a Report and Recommendation that resolution of the motions be deferred so that counsel could be appointed to assist the Independent Fiduciary in addressing some of the issues raised in the pending applications. DE 269. No objections were filed. Nonetheless, the NOITU Fund requested that the Court not defer ruling on its pending cross-motion on the successor liability issue, arguing that this motion was in no way dependent on the issues on which the Independent Fiduciary required legal guidance. DE 270. By Order dated December 12, 2014, the Court granted the NOITU Fund's request and ruled that it would undertake a review of this distinct issue in a separate decision. DE 273. Such review follows.

### B. The Parties' Motions with Respect to Successor Liability

In order to understand the parties' applications with respect to successor liability, the Court must briefly discuss EHPA's state court judgment as well as the rela-

tionship between the BIW and NOITU Funds.

### 1. The State Court Judgment

In October 2001, the BIW Fund commenced a state court action against Lasky, Lasky's wife, and EHPA to recover the monies that Lasky failed and refused to remit to it. The Laskys and EHPA counterclaimed against the Fund, alleging that the Fund was contractually obligated to maintain a reserve fund for the benefit of Lasky and EHPA but failed to do so. After the BIW Fund failed to produce documents in discovery, the state court granted summary judgment to Lasky and EHPA on their counterclaims. Thereafter, an inquest was held. The BIW Fund did not appear, and judgment was entered for Lasky and EHPA against the BIW Fund in the amount of $741,866.75. Thus, despite the fact that Lasky pled guilty to embezzling $365,000 from the BIW Fund, Lasky—through his alter ego EHPA—now asserts a claim against the BIW Fund assets based on this state court judgment.

### 2. The BIW and NOITU Funds

EHPA seeks to enforce its state court judgment against the NOITU Fund on the grounds that the NOITU Fund is the legal successor of the BIW Fund. In response, the NOITU Fund cross-moves for a declaration that it is not the successor of the BIW Fund. The parties rely on the following evidence:

#### a. Affidavit of Candice Clark

Evidence concerning the interrelation between the BIW and NOITU Funds comes primarily from the affidavit of Candice Stark, Co–Administrator of the NOITU Fund, which was submitted by the NOITU Fund in support of its cross-motion. DE 262–2, Affidavit of Candice Stark, dated June 30, 2014 ("Stark Aff."). Ms. Stark was an accountant with the NOITU Fund in 1996 when she learned that the BIW Fund would be shutting down due to Lasky's embezzlement of contributions made by employers who participated in the BIW Fund. *Id.* ¶¶ 1–2. Without the money from the employers, the BIW Fund could not pay the health claims that were coming in for the people who had health benefits under the BIW Fund. *Id.* ¶ 3.

In an attempt to help out the employers—who did not want to pay twice for hospital and medical services that had already been rendered—as well as employees who were left without health coverage, the NOITU Fund agreed to permit some of the BIW Fund's participants to become participants in the NOITU Fund. *Id.* ¶¶ 4–5. Specifically, the NOITU Fund agreed to pay the unpaid balance of the last three months of BIW Fund claims for the employees (and spouses and children) of the employers who would agree to start contributing to the NOITU Fund. *Id.* ¶ 6. Most of the BIW Fund employers who moved to the NOITU Fund did so as of June 1, 1996. *Id.* For the employees (and spouses and children) of those employers, the NOITU Fund agreed to pay unpaid claims that they had incurred in March, April and May of 1996. *Id.* The NOITU Fund did not pay anything towards claims incurred prior to that date.[1] *Id.*

Ms. Stark "believe[s] that less than one half of the participants in the BIW Fund became participants in the NOITU Fund-roughly 1100 out of the BIW Fund's 2400

---

1. According to the NOITU Fund's counsel, at the time the BIW Fund ceased operations, its contribution rates were lower than those of the NOITU Fund. In order to attract these employers notwithstanding its higher rates, the NOITU Fund offered to pay the last three months of claims incurred by the employees of employers who joined the NOITU Fund and accepted the NOITU Fund's higher rates. DE 253–7 at 6.

participants." *Id.* ¶ 7. Some of the BIW Fund employers did not seek to become contributing employers to the NOITU Fund, and the NOITU Fund did not accept a number of the BIW Fund employers who did want to move. *Id.* As the sponsor of the NOITU Fund, NOITU required, as a condition for a BIW Fund employer to become a contributing employer to the NOITU Fund, that the BIW Fund employer enter into a separate collective bargaining agreement with NOITU that covered terms and conditions of employment, including health care coverage. *Id.* Not all of the BIW Fund employers were willing to comply with that requirement. *Id.*

According to Ms. Stark, the NOITU Fund did not receive any assets of the BIW Fund, and it did not enter into any contracts with the BIW Fund. *Id.* ¶ 8. The NOITU Fund also did not broadly assume any liabilities of the BIW Fund. *Id.* Rather, the NOITU Fund only agreed to pay specified health claims incurred during a limited period of time, and only for former BIW Fund participants who eventually joined the NOITU Fund. *Id.*

### b. NOITU Board Minutes

The minutes of the meeting in which the NOITU Fund's Board of Trustees approved the membership of certain of the BIW Fund's participants reflects that the Board's approval was subject to the following three conditions:

(1) the satisfaction of all the requirements for coverage under the NOITU ... Fund, including the receipt of WT–4–B forms from all contributing associate employers of Local 119 and Local 835, (2) the execution by the BIW employers of appropriate documentation evidencing their consent to be bound by all the NOITU Fund's requirements provided in its Trust Agreement and under its rules and regulations, and (3) the express understanding that *the NOI-*

*TU Fund shall not accept any assets of the BIW Fund and that the NOITU Fund is not and shall not be the "successor" to the BIW Fund.*

*Id.* ¶ 9 and Ex. A at 13 (emphasis added).

### c. Letters by the Independent Fiduciaries

In support of its successor liability motion, EHPA relies primarily on letters written by David Silverman, Esq., an attorney and former Independent Fiduciary of the BIW Fund appointed by the Court, and Jacqueline Carmichael, the current Court-appointed Independent Fiduciary and non-attorney. In these letters, the Independent Fiduciaries reference a "take over" of the BIW Fund by the NOITU Fund and offer conflicting statements on the number of transferring participants.

On September 3, 2004, Mr. Silverman wrote to the Court to set forth his activities as Independent Fiduciary. In this letter, he stated that the BIW Fund "transferred *some or all of its participants* into the plan being operated by [NOITU] in June of 1996." DE 253–14, Affirmation of Austin Graff ("Graff Affirm."), dated May 30, 2014, Ex. M (emphasis added). More specifically, Mr. Silverman stated:

NOITU reiterated that they had *taken over* the members in June 1996, but made payments on health bills which were incurred as of March, 1996. Having paid some invoices incurred prior the membership date, NOITU is now seeking reimbursement.

While NOITU's charitable activity is commendable, the retroactive date of loss payments were more than offset by the value of having *an infusion of over 3,000 members* and its consequent economic gain to the acquirer.

*Id.* (emphasis added).

Mr. Silverman reiterated the same position in his letter to the Court on December

22, 2004. In his quarterly report to the Court, Mr. Silverman stated:

> The [ ]BIW Fund was *taken over* by NOITU in June 1996. NOITU made payments of outstanding invoices dating back to March of 1996. At the present time we have no way of determining whether or not the participants in the [ ]BIW Fund paid medical providers for services rendered prior to March of 1996 by use of their own funds. As previously reported, NOITU extended the payment of invoices back to March of 1996, although they did not take over until June of 1996. While we commend this charitable activity on the part of NOITU, our initial responses is that their generosity is more than offset by the value of having *an infusion of over 3,000 new members* in the Fund.

DE 253–15, Graff Affirm. Ex. N (emphasis added).

In his July 25, 2006 letter to the Court, Mr. Silverman stated:

> [F]rom the records made available to us, there were 3,628 participants in the Fund. When the Fund was no longer able to pay the medical expenses incurred by the participants, arrangements were made to have the Fund *taken over* by another welfare plan being administered by the ... NOITU[ ]. From information from counsel for NOITU, arrangements were made to honor claims prospectively and retrospectively for a period of one month. As previously reported, NOITU is of the opinion that since it retroactively covered the participants for some 30 days prior to the *takeover*, if any distribution is made, it should be made to NOITU. This generous act on the part of NOITU discounts the effect upon NOITU of a *sudden infusion of over 3,000 new members*.

DE 253–16, Graff Affirm. Ex. O (emphasis added).

Similarly, on March 30, 2007, Mr. Silverman noted that "[a] *sub-total of the* participants in the BIW Fund was transferred to an insurance fund administered by an organization known as the National Organization of Industrial Trade Unions ('NOITU'), which continued on in the payment of any past due expenses." DE 253–17, Ex. P (emphasis added).

After Mr. Silverman's death in April 2007, the Court appointed Jacqueline Carmichael as Independent Fiduciary to the BIW Fund. In her October 11, 2011 report to the Court seeking Court approval of her plan to distribute the final assets of the BIW Fund, she stated that "[t]he total number of employees with BIW at [the] time of *NOITU takeover* (information provided by NOITU) *was 3629, of which 1172 transferred to NOITU and the balance (2457) did not.*" DE 253–3, Graff Affirm., Ex. B (emphasis added).

However, in a more recent letter to the Court, Ms. Carmichael explains:

> [EHPA] has taken my words out of context. It has never been my understanding, either from general impressions or any documentation I've seen, that the NOITU Fund is the BIW Fund's successor. The words used in my proposed Distribution Plan to the Court should not be interpreted as "a matter of fact and (imputed) against the BIW Fund and the NOITU Fund."

> When I used the term "take over," I meant those employers who *chose* to join NOITU. If a merger of succession occurred, there would be a complete movement of all of BIW's members. This did not occur. Based on the information contained in [EHPA's] Motion, the NOITU Fund "wanted to attract those employers notwithstanding its higher rates." This confirms my understanding that each employer/member either chose to join NOITU or selected another op-

tion. As stated in my Distribution Plan, "1172 transferred to NOITU and the balance (2457) did not."

The BIW Fund ceased operations. It had thousands of members at the time of its demise. NOITU, and perhaps others, clamored for their business. This is not an uncommon practice. . . .

Furthermore, if I believed the BIW Fund merged into the NOITU Fund, then in my opinion, the only true recipient of the BIW Fund should be the successor Fund, namely the NOITU Fund. This is not my belief and that is why it was not mentioned in my proposed Distribution Plan submitted to the Court.

DE 263–2, attached to the Affirmation of Austin Graff, dated July 3, 2014, Ex. Q.

## II. STANDARD OF REVIEW

The parties do not address the governing standard of review nor do they specify under which rule their motions are made. Notwithstanding this omission, given the parties' submissions, the Court will treat the motions as ones for summary judgment.

Federal Rule of Civil Procedure 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a). The moving party bears the initial burden of establishing the absence of any genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Holcomb v. Iona Coll.,* 521 F.3d 130, 137 (2d Cir.2008). To determine whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences aris-

ing from that evidence in the light most favorable to the non-moving party. *Doro v. Sheet Metal Workers' Int'l Ass'n,* 498 F.3d 152, 155 (2d Cir.2007); *Woodman v. WWOR–TV, Inc.,* 411 F.3d 69, 75 (2d Cir. 2005).

Where the movant shows a prima facie entitlement to summary judgment, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." *Salahuddin v. Goord,* 467 F.3d 263, 273 (2d Cir.2006). "[T]he non-movant cannot rest on allegations in the pleadings and must point to specific evidence in the record to carry its burden on summary judgment." *Id.; see McPherson v. N.Y.C. Dep't of Educ.,* 457 F.3d 211, 215 n. 4 (2d Cir.2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment."); *Byrnie v. Town of Cromwell, Bd. of Educ.,* 243 F.3d 93, 101 (2d Cir.2001) ("Even where facts are disputed, in order to defeat summary judgment, the non-moving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor."). Summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see Dobbs v. Dobbs,* No. 06–CV–6104, 2008 WL 3843528, at *5 (S.D.N.Y. Aug. 14, 2008) ("The Court's goal should be to isolate and dispose of factually unsupported claims.") (internal quotation marks omitted).

## III. DISCUSSION[2]

EHPA contends that its successor liability argument appears to be an issue of

---

**2.** Because EHPA concedes in its reply brief that the *Rooker–Feldman* doctrine does not preclude this Court from resolving the succes-

sor liability issue, the Court need not, and does not, address this issue. *See* DE 263–4 at 9.

first impression as "[t]here does not appear to be any case law discussing the doctrine of successor liability when one ERISA benefit plan informally takes over another benefit plan's liabilities." DE 253–18 at 15. Instead, EHPA relies on the standard for successor liability articulated by the Supreme Court in *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 43, 107 S.Ct. 2225, 96 L.Ed.2d 22 (1987). The test articulated in *Fall River Dyeing* addresses "the issue of a successor employer's obligation to bargain with a union that had represented the employees of its predecessor." *Id.* at 36, 107 S.Ct. 2225. This test focuses on "whether the new company has 'acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations.'" *Id.* at 43, 107 S.Ct. 2225 (quoting *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 184, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973)). In determining "substantial continuity between the enterprises," courts examine: "[1] whether the business of both employers is essentially the same; [2] whether the employees of the new company are doing the same jobs in the same working conditions under the same supervisors; and [3] whether the new entity has the same production process, produces the same products, and basically has the same body of customers." *Id.*

In response, the NOITU Fund does not concede that *Fall River Dyeing* supplies the appropriate standard for successorship here, where the entities at issue are not-for-profit employee benefit trusts, rather than for-profit business enterprises. Nevertheless, the NOITU Fund argues that

even if that were the correct standard, EHPA cannot establish as a matter of law that the NOITU Fund is the BIW Fund's successor.

The parties' briefs on the proper test for successor liability in this context are lacking. As noted above, the *Fall River Dyeing* test focuses on "whether the new company has '*acquired substantial assets of its predecessor* and continued, without interruption or substantial change, the predecessor's business operations.'" *Id.* (quoting *Golden State Bottling*, 414 U.S. at 184, 94 S.Ct. 414) (emphasis added). Here, however, it is undisputed that the NOITU Fund did not receive any assets of the BIW Fund. Nonetheless, the Court finds that regardless of what test is applied,[3] EHPA has failed to proffer any evidence from which a genuine issue of material fact might arise.

In support of its motion, EHPA relies largely on statements made by the former Independent Fiduciary of the BIW Fund, David Silverman, from 2004 to 2007, in correspondence to the Court. EHPA does not reference any events or documents contemporaneous with the 1996 dissolution of the BIW Fund. In fact, there is a complete dearth of documentation memorializing any step taken by the NOITU Fund to acquire or merge with the BIW Fund. For example, EHPA has identified no contract memorializing a merger of the Funds, a transfer of assets, or an undertaking by one trust fund of the other's debts.

On the other hand, the NOITU Fund submits the affidavit of Candice Stark, Co–Administrator of the NOITU Fund. Ac-

**3.** Under traditional common law rules, for example, "a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities." *New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir.2006). There are four exceptions to this rule: (1) where the successor has expressly or impliedly assumed the predecessor's tort liability; where there was a consolidation or merger of seller and purchaser; (3) where the purchasing corporation was a mere continuation of the selling corporation; and (4) where the transaction was entered into fraudulently to escape such obligations. *Id.*

cording to Ms. Stark, when the BIW Fund ceased operations, less than half of its participants became participants of the NOITU Fund and, for the employees of these participants, the NOITU Fund agreed to pay unpaid claims they had occurred in March, April and May of 1996. According to Ms. Stark, the NOITU Fund did not enter into any contracts with the BIW Fund, did not receive any assets of the BIW Fund, and did not assume any liabilities of the BIW Fund other than the three months of unpaid health claims discussed above. This understanding is reflected in the minutes of the meeting in which the NOITU Fund Board of Trustees approved the membership of certain of the BIW Fund's participants. The minutes provide that such approval was subject, *inter alia,* to "the execution by the BIW employers of appropriate documentation evidencing their consent to be bound by all the NOITU Fund's requirements provided in its Trust Agreement and under its rules and regulations." Stark Aff. Ex. A at 13. It was also subject to "the express understanding that the NOITU Fund shall not accept any assets of the BIW Fund and that the NOITU Fund is not and shall not be the 'successor' to the BIW Fund." *Id.*

In an attempt to diffuse the import of this language—i.e., that the transferring participants were not automatically bound by the NOITU Fund's rules, the NOITU Fund took no assets of the BIW Fund, and that the NOITU Fund was not the BIW Fund's successor—EHPA argues that the Board imposed these conditions because "[o]bviously the NOITU Fund received legal counseling that there was a risk that the NOITU Fund could be the BIW Fund's successor based upon its actions that day in March 1996." DE 263–4 at 6. EHPA continues that "[t]he NOITU Fund had actual knowledge that its action would look from the outside that it was the successor of the BIW Fund. If this was not true, then there was no reason for the

NOITU Fund to say that it was not and shall not be the successor." DE 263–4. EHPA then urges the Court to reject the Board resolution because while it "may reveal intent, . . . it does not reveal what actually happened and whether there is truly successorship." *Id.*

EHPA's argument is entirely speculative and without merit. EHPA asks the Court to ignore the plain language of the only contemporaneous documentary evidence in the record and adopt a contradictory conclusion without pointing to an iota of evidence in support thereof. EHPA's conclusion would require the factfinder to engage in a chain of speculations and unsupported inferences and is to be accorded no weight on this summary judgment motion. *See Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir.1996) ("[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment.").

Next, EHPA argues that "[b]oth Independent Fiduciaries admit that the NOITU Fund ***took over*** the BIW Fund," and "[b]ased upon the Independent Fiduciaries' statements alone, the NOITU Fund can be determined to be the BIW Fund's successor." DE 253–18 at 14–15 (emphasis in original). EHPA's reliance on characterizations of the NOITU transaction made by Independent Fiduciaries who were not directly involved in the transaction is misplaced.

First, although Ms. Carmichael—a non-attorney—referenced an "NOITU take over" in an October 11, 2011 letter to the Court, she later stated she never meant to convey that the NOITU Fund is the BIW Fund's legal successor. Instead, she explained that she used the term "take over" to refer only to those employers who chose to join NOITU and that no merger of the Funds occurred. DE 263–2.

Next, with regard to Mr. Silverman's letters, who was an attorney, EHPA ar-

gues that his references to the NOITU Fund "taking over" the BIW Fund constitute admissions by Silverman which the Court "should accept ... as a matter of fact and impute [them] against the BIW Fund and the NOITU Fund." DE 253–18 at 14–15. EHPA's argument is flawed for several reasons.

 It is true, as EHPA contends that, "[a] court can appropriately treat statements in briefs as binding judicial admissions of fact." *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir.1994). As noted by the Second Circuit:

> "Judicial admissions are not evidence at all. Rather, they are formal concessions in the pleadings in the case or stipulations by a party or counsel that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. Thus, a judicial admission, unless allowed by the court to be withdrawn, is conclusive in the case...."

*Hoodho v. Holder*, 558 F.3d 184, 191 (2d Cir.2009) (quoting 2 McCormick on Evid. § 254 (6th ed.2006)). To be considered a judicial admission, however, a statement must be a "clear and unambiguous admission of fact." *United States v. McKeon*, 738 F.2d 26, 30 (2d Cir.1984); *see also Kregler v. City of New York*, 821 F.Supp.2d 651, 656 (S.D.N.Y.2011); *Callahan v. U.S. Filter, Inc.*, No. 01–CV–6406, 2005 WL 61498, at *2 (W.D.N.Y. Jan. 11, 2005).

 Applying this standard to the instant case, the Court finds that Mr. Silverman's informal references to a "take over" did not constitute judicial admissions of fact which would bind either Fund in this action. As an initial matter, Mr. Silverman was never the BIW Fund's attorney (nor the NOITU Fund's for that matter), and his ability to bind the BIW Fund by his statements is therefore questionable.

*See Haywood v. Bureau of Immigration & Customs Enforcement*, 372 Fed.Appx. 122, 124 (2d Cir.2010) (noting that "all litigants ... are generally bound by the admissions of *retained counsel*") (emphasis added).

 Next, "judicial admissions are 'statements of fact rather than legal arguments made to a court.'" *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 45 (2d Cir.2005) (quoting *N.Y. State Nat'l Org. for Women v. Terry*, 159 F.3d 86, 97 n. 7 (2d Cir.1998)). To the extent EFIPA attaches legal significance to Mr. Silverman's use of the term "take over" such that this Court should rule, as a matter of law, that the NOITU Fund was the legal successor of the BIW Fund, EFIPA's argument must be rejected. *See Okwedy v. New York*, 195 Fed.Appx. 7, 9 (2d Cir.2006) ("But these statements are legal theories rather than facts, and as such cannot constitute binding judicial admissions attributable to the City."); *Stichting Ter Behartiging*, 407 F.3d at 45 (finding that a statement in party's Rule 56.1 statement that "'Core ... assigned to the former Saybolt B.V. Shareholders all of Core's' claims, cannot be taken as a concession that, under applicable law, the assignment was validly made").

Third, it cannot be stated that Mr. Silverman's informal references to a "take over"—which were not made in the context of discussing successor liability but rather in the context of reporting to the Court on his activities as Independent Fiduciary—were "clear and unambiguous." *McKeon*, 738 F.2d at 30. Indeed, Mr. Silverman himself noted that "[t]he methodology by which [ ]BIW transferred some of all of its participants" to the NOITU Fund was "unknown." DE 253–14. In this regard, the Court notes that Mr. Silverman's use of the term "take over" was largely contradicted by the Board minutes and the

sworn testimony of Ms. Stark, who, unlike Mr. Silverman, had personal knowledge of the events in question. For all of these reasons, the Court finds that Mr. Silverman's statements do not constitute judicial admissions.[4]

At the end of the day, the only question of fact potentially raised by EHPA's papers is the actual number of participants who transferred from the BIW Fund to the NOITU Fund. According to Ms. Stark, roughly 1100 out of the 2400 BIW Fund participants became participants in the NOITU Fund. According to Mr. Silverman's letters, a "sub-total" of the participants in the BIW Fund was transferred to the NOITU Fund in the approximate amount of 3000 participants. According to Ms. Carmichael, the current Independent Fiduciary, 1172 out of 3629 BIW Fund participants transferred to the NOITU Fund. While this conflicting information may raise a question of fact as to the number of transferring participants, on this record, it does not raise a genuine issue of material fact on whether the NOITU Fund is the legal successor of the BIW Fund.

Lastly, the fact that the NOITU Fund and the BIW Fund previously shared the same legal counsel for a limited period of time is of no moment. The Department of Labor requested that Proskauer Rose LLP step in to serve as counsel to the BIW Fund in May 2007 because the latter had no money to hire its own counsel, and Proskauer was already familiar with the facts of the case by virtue of its long-standing representation of the NOITU Fund. That was more than 10 years after the BIW Fund had ceased operations. This fact, in and of itself, does not raise a genuine issue of material fact on whether the NOITU Fund is the legal successor to the BIW Fund. Accordingly, the undersigned reports and recommends that EHPA's motion be denied and the NOITU Fund's cross-motion be granted.[5]

4. The Court notes that EHPA's argument that Mr. Silverman's references to a "take over" somehow convey that the NOITU Fund is the legal successor of the BIW Fund is somewhat illogical given Mr. Silverman's role in this case. As Independent Fiduciary of the BIW Fund, he was tasked with managing the affairs and distribution of the BIW Fund. If the NOITU Fund were the BIW Fund's successor, presumably there would have been no need for an independent fiduciary to manage the affairs of the BIW Fund. Likewise, if the NOITU Fund were in fact the BIW Fund's legal successor, it would have acquired all of the monies remaining in the BIW Fund's account and there would be no need, as noted by the current Independent Fiduciary, for the Court to monitor its distribution. *See* DE 263–2, Ex. Q, June 30, 2014 Letter of Ms. Carmichael to the Court ("[I]f I believed the BIW Fund merged into the NOITU Fund, then in my opinion, the only true recipient of the BIW Fund should be the successor Fund, namely the NOITU Fund. This is not my belief and that is why it was not mentioned in my proposed Distribution Plan submitted to the Court."). Finally, if a merger of the BIW Fund and NOITU Fund had in fact occurred, all of the BIW Fund's participants would have joined the NOITU Fund.

5. Application of the *Fall River Dyeing* test does not warrant a different conclusion. The first element of the *Fall River Dyeing* analysis—whether the businesses of the two entities are the same—is uncontested as the BIW Fund and the NOITU Fund were in the same line of business: employee health and welfare plans subject to regulation under ERISA. EHPA concedes, however, that the second element—whether the employees of the new company are doing the same jobs in the same working conditions under the same supervisors—does not fit when the two entities being analyzed are employee benefit trusts. Even if the Court "tweaked' this element as EHPA suggests to examine "whether the ... beneficiaries of the BIW Fund who transferred to the NOITU Fund were receiving the same or similar benefits for the same services," DE 253–18 at 16, EHPA proffers no evidence on the whether the types of benefits received were the same. Lastly, EHPA has not proffered admissible evidence on the third factor—whether the new entity has the same

## OBJECTIONS

A copy of this Report and Recommendation is being served by the Court on all parties. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72; *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir.2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir.1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir.1996).

**SO ORDERED.**

Filed Feb. 10, 2015.

production process, produces the same products, and basically has the same body of customers. While EHPA argues that "the NOITU Fund took over most, if not all of the BIW Fund's participants," it relies solely on Mr. Silverman's statement that the NOITU Fund had an "infusion of over 3,000 members" when the BIW Fund participants transferred. *Id.* at 17. Mr. Silverman himself, however, also stated that only a "sub-total" of BIW participants transferred to the NOITU Fund, DE 253–17, Ex. P, which is consistent with Ms. Stark's affidavit and Ms. Carmichael's letter. Thus, it is clear from the record that not all of BIW Fund's participant "customers" transferred their business to the NOITU Fund. Accordingly, it cannot be said that the NOITU Fund has "basically the same body of customers" as the defunct BIW Fund once had.

